# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| EARL HUTCHERSON, | ) |
| --- | --- |
| Petitioner, | ) |
| v. | ) No. 2:17-cv-04008-NKL |
| JEFF NORMAN, | ) |
| Respondent. | ) |

## ORDER

Petitioner Earl Hutcherson, an inmate at the Missouri Department of Corrections' Boonville Correctional Center, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. Hutcherson pleaded guilty on June 24, 2013, in the Circuit Court of Boone County, Missouri to two counts of involuntary manslaughter and was sentenced to two concurrent terms of ten years' imprisonment. He filed a motion for post-conviction relief pursuant to Mo. Sup. Ct. R. 24.035, which was denied and upheld on appeal.

Hutcherson raises two ground for relief: (1) that his plea counsel was ineffective for misleading him as to the amount of time he would have to serve before becoming eligible for parole, and affirmatively suggesting that he would only have to serve a small fraction of his sentence before becoming eligible; and (2) that his plea counsel was ineffective for failing to provide him pretrial motions and evidence, rendering his plea involuntary. The petition is denied.

**I.    Background**

The pertinent facts were summarized as follows by the Missouri Court of Appeals in connection with Hutcherson's appeal of the order denying his Rule 24.035 motion:

While represented by retained counsel's partner Mr. Matthew Fry, Mr. Hutcherson pleaded guilty to two counts of the Class B felony of involuntary manslaughter in the first degree in June 2013. He had been charged with two counts of murder in the second degree. He admitted during the plea colloquy that he was under the influence of alcohol in July 2011 when driving on Interstate 70 near Columbia, Missouri, leaving his traffic lane, and striking and killing two individuals who were not passengers in his vehicle. The court sentenced him, in accordance with a plea agreement, to two concurrent terms of ten years' imprisonment. Mr. Hutcherson had two prior convictions for driving while intoxicated.

Mr. Hutcherson's post-conviction retained counsel filed a motion to vacate, set aside, or correct the judgment or sentence in December 2013. This motion claimed ineffective assistance of counsel and an involuntary plea. According to the motion, Mr. Hutcherson was denied the effective assistance of counsel because his retained counsel, Mr. Scott Rosenblum, was not present during the plea hearing and Mr. Fry did not fully explain to Mr. Hutcherson that by pleading guilty he was waiving a presentence investigation report and sentencing assessment report. He also claimed ineffective assistance because trial counsel, Mr. Rosenblum and Mr. Fry, did not fully investigate his case, including the admissibility and reliability of the evidence obtained from a blood-alcohol test. Mr. Hutcherson claimed that his plea was involuntary because he had taken prescription pain medication for a headache some thirty or forty-five minutes before the hearing and that this impaired his ability to concentrate on the proceedings.

The motion court permitted two extensions for counsel to file an amended motion, which was filed, in compliance with Rule 24.035 in April 2014. This motion added details to Mr. Hutcherson's claim that trial counsel did not fully investigate his case, including sobriety testing, the positions of the victims and their vehicles, whether a flat tire could have caused Mr. Hutcherson's vehicle to swerve, his phone records, and additional accident reconstruction analysis. Mr. Hutcherson also claimed that, because counsel failed to conduct such an investigation, counsel's advice to plead guilty was not reasonably effective assistance of counsel. Other alleged representational shortcomings included that … counsel failed to provide Mr. Hutcherson with copies of motions filed on his behalf, discovery received from the State, and the results of trial counsel's investigation. Mr. Hutcherson further claimed that his plea was involuntary because he did not understand the evidence against him and the evidence that could be presented at trial, and he had not been given the opportunity to review the discovery or pleadings his counsel had filed. Among other matters, he claims that he was unaware that the Department of Revenue certified officer on site was not certified when she tested him, hospital emergency room cameras were blocked and did not record sound when his blood was drawn, an independent laboratory questioned the accuracy of the blood alcohol test, and after the accident it appeared that his right rear tire was flat and a witness driving behind him said that Mr. Hutcherson veered as if a tire had blown out.

***

Doc. 10-4, pp. 2-5.

> In the first point, Mr. Hutcherson argues that counsel was ineffective for failing to advise him about numerous aspects of the evidence and defense, including the circumstances under which his blood was tested, available evidence as to how the accident occurred, and motions filed and depositions taken in connection with the case. Regarding Mr. Hutcherson's claim that he did not have sufficient information on which to base his decision to plead guilty, the evidentiary hearing testimony shows, to the contrary, that he was actively engaged in his defense and plea counsel thoroughly investigated the circumstances giving rise to the charges. Mr. Hutcherson's plea counsel was not the first retained counsel on the case. Previously retained counsel had gone so far as to conduct discovery and engage the services of an accident reconstruction firm, which produced a report and concluded that Mr. Hutcherson's vehicle had veered off the road; a company representative even advised plea counsel that he should not be called as a witness, because counsel would not want "us on the stand in this case." Still, plea counsel did not believe that the case was ready for trial on the basis of the work prior counsel had done, so they consulted with other experts, conducted depositions, and took steps to preserve his legal defenses, including filing a motion to suppress. Mr. Hutcherson's plea counsel advised him that he had a triable case, no recommendation would be made to him about whether he should accept the plea agreement that the State had offered, and counsel would fully support him whatever decision he made. Mr. Rosenblum also testified that "Mr. Hutcherson was an engaged client and was in the office frequently reviewing his case with me and with Mr. Fry, so if he didn't actually take a physical copy [of the motion to suppress], I'm sure he was aware of it."
>
> Mr. Fry testified that, while he was unsure whether Mr. Hutcherson was given a copy of the motion to suppress, "I do know that we went over the document and we discussed it, but I don't know if he physically read it all." This motion to suppress sought to exclude the results of blood alcohol tests taken at the hospital about two hours after the accident, which occurred at 7:58 p.m. It was based on a claim of illegal detention and Mr. Hutcherson's repeated refusals, based on counsel's advice, to undergo sobriety testing, and included information about the lack of audio when Mr. Hutcherson allegedly consented to have his blood drawn. Mr. Hutcherson's plea counsel also testified that he consulted with three different experts regarding the admissibility of the blood-test evidence, but ultimately did not believe that they would help the defense. No hearing was ultimately sought on the motion because the State said there would be no further plea offers if a suppression hearing were held. Plea counsel further testified that during the firm's representation of Mr. Hutcherson, the attorneys met with him or spoke with him on the phone frequently, went over all of the discovery the State produced, as well as the depositions the firm had conducted and all of the information received from various experts. They considered with Mr. Hutcherson the pros and cons of

going to trial and the pros and cons of accepting a plea. Counsel agreed that their "consultations with Mr. Hutcherson probably ranked some of the highest that [they] have had with clients over the years with this type of charges [sic]." Plea counsel stated that on at least two occasions he left depositions at the front desk for Mr. Hutcherson to pick up and review.

*Id.*, pp. 6-8.

> Mr. Hutcherson testified that counsel did not provide all of the documents to him, but the [motion] court was free not to believe his testimony. And in fact, as to the efforts that trial counsel undertook to work the case up for trial, the court specifically found Mr. Fry credible. The motion court also found Mr. Hutcherson not credible as to whether he had been kept informed and had seen all of the documents and evidence in the case. While Mr. Hutcherson claims that uncontradicted testimony (his own) proves that he did not receive all of the information and documents needed to make an informed decision to plead guilty, plea counsel did contradict his testimony, and the court found counsel's testimony credible. Plea counsel were seasoned defense lawyers with experience in DWI accident cases. Mr. Hutcherson has not shown that they were ineffective. They did what he asked them to do, they fully investigated the case, and they spent a great deal of time exploring every avenue of defense with him so that his decision to plead would be voluntary and made on the basis of all the facts.

\*\*\*

*Id.*, pp. 8-9.

> As to the second point, whether counsel's investigation of the case was constitutionally defective for failing to conduct another accident reconstruction, counsel testified that a second accident reconstruction company was contacted, but that no follow-up occurred because they were negotiating a plea agreement with the State shortly after the initial contact was made and because "Mr. Hutcherson had indicated that he wanted us to work something out on the case [with the State]." Mr. Hutcherson introduced the testimony of Mr. Travis Jones, a retired police officer, who discussed the additional factors he would have included in such a reconstruction. …. Significantly, Mr. Jones testified that it was only "possible" that something besides impaired driving caused the accident, and that, despite the presence of traffic preceding Mr. Hutcherson in his lane of travel, Mr. Hutcherson's vehicle was the only one that struck the pedestrians on the highway's shoulder
>
> Counsel's strategic choices, made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *McLaughlin v. State*, 378 S.W.3d 328, 342 (Mo. banc 2012). … Even if the witness's testimony would have been more favorable, "counsel is not required to shop around for an expert who might provide more favorable testimony." *Dorsey v. State*, 448 S.W.3d 276, 294 (Mo. banc 2014). Mr. Hutcherson did not establish that counsel was aware

4

of Mr. Jones or that his testimony would have assisted his defense. Moreover, as noted above, plea counsel aborted their effort to secure a second accident reconstruction report because active plea negotiations had begun, and Mr. Hutcherson had indicated his preference to enter a plea. Counsel would have wasted his resources under these circumstances if they had paid a second accident reconstruction expert to prepare a report.

\*\*\*

*Id.,* pp. 10-12.

> In the third point, Mr. Hutcherson argues that his consumption of Vicodin before the plea hearing rendered his plea involuntary. … A review of the plea hearing transcript shows that Mr. Hutcherson was actively engaged in responding to the court during the plea colloquy, answering in some cases more than just "yes" or "no." Thus, any contention that his cognition was impaired during the hearing rests solely on his testimony, which the motion court was free to believe or to discredit. The motion court found his testimony on this point not credible. This point is denied.
>
> Because the court did not err in denying Mr. Hutcherson's post-conviction motion, [the Court of Appeals] affirm[s].

*Id.*, pp. 12-13.

## II. Discussion

A federal court may not grant habeas relief unless the state court's decision was either contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence adduced in state court. 28 U.S.C. § 2254(d)(1)–(2). The phrases "contrary to" and "unreasonable application of" in section 2254(d)(1) and (2) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 405 (2000). A federal court may issue a writ of habeas corpus under the "contrary to" clause if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or reached a decision contrary to Supreme Court precedent when confronting facts that were materially indistinguishable. *Id.* A federal court may grant relief under the "unreasonable application" clause if the state court correctly identified

5

the governing legal principle, but unreasonably applied it to the facts of the particular case. *Bell v. Cone,* 535 U.S. 685, 694 (2002).

Hutcherson's claims assert ineffectiveness of counsel under *Strickland v. Washington,* 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his 'trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense.'" *Nave v. Delo,* 62 F.3d 1024, 1035 (8th Cir. 1995) (quoting *Lawrence v. Armontrout,* 961 F.2d 113, 115 (8th Cir. 1992)). Failure to satisfy both prongs is fatal to the claim of ineffective assistance. *Pryor v. Norris,* 103 F.3d 710, 713 (8th Cir. 1997).

Hutcherson's claims fail because they are either procedurally barred or lack merit.

### A.  Claim I, Hutcherson's understanding of his parole eligibility, and request for an evidentiary hearing

Hutcherson's first claim is that his plea counsel was ineffective for failing to inform him that he would have to serve 85% of his sentences before becoming eligible for parole, and instead misleading him to think he would only have to serve a small fraction of the sentence before becoming eligible. Hutcherson alleges that if plea counsel had performed competently, then he would not have pled guilty and would have insisted on going to trial. Hutcherson did not present this claim at any stage in his state court proceedings. He attempts to overcome his default by alleging ineffective assistance of post-conviction counsel under *Martinez v. Ryan,* 132 S.Ct. 1309 (2012).

"A habeas petitioner is required to pursue all available avenues of relief in the state courts before the federal courts will consider a claim." *Sloan v. Delo,* 54 F.3d 1371, 1381 (8th Cir. 1995), *cert. denied,* 516 U.S. 1056 (1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process" before presenting those issues in an application for habeas relief in federal court. *O'Sullivan v. Boerckel,* 526 U.S. 838, 845 (1999). "If a petitioner fails to exhaust state remedies and the court to which he should have presented his claim would now find it procedurally barred, there is a procedural default." 54 F.3d at 1381. *See also Sweet v. Delo,* 125 F.3d 1144, 1149 (8th Cir. 1997) (recognizing that failure to present claims in the Missouri courts at any stage of direct appeal or post-conviction proceedings is a procedural default), *cert. denied,* 523 U.S. 1010 (1998).

A federal court may not review procedurally defaulted claims "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991). A petitioner "may establish cause for a procedural default ... in two circumstances: where the state courts did not appoint counsel in the [post-conviction] proceeding for an ineffective-assistance-at-trial claim; and where appointed counsel in the [post-conviction] proceeding ... was ineffective under *Strickland v. Washington,* 466 U.S. 668 (1984)." *Martinez v. Ryan,* 132 S.Ct. 1309 (2012).

Hutcherson cannot establish cause for his procedural default because he cannot demonstrate that his post-conviction counsel was ineffective under *Strickland.* At Hutcherson's guilty plea hearing of June 24, 2013, the State's attorney recommended ten years' imprisonment in the Missouri Department of Corrections on both counts of involuntary manslaughter, with the sentences to run concurrently. The court asked Hutcherson whether that was what he expected to hear, and he answered, "Yes, your Honor." Doc. 10-8, p. 17. After Hutcherson had pled guilty and the victims' family members had testified, and as the court was preparing to pronounce the sentence, Hutcherson's attorney, Mr. Fry, asked the court if Hutcherson could be allowed to self-surrender in three weeks so as to finish taking care of the sale of some property. Mr. Fry stated,

7

"This is a very lengthy sentence. [Hutcherson] will have to do at least 8.5 years of the sentence before he would be eligible for parole. And he is not a flight risk…." *Id.,* pp. 39-40. The court then directly addressed Hutcherson, telling him that his attorney's request would be denied and he would be taken into custody. *Id.*, p. 40. Neither at that point, nor at any point during the guilty plea hearing, did Hutcherson say that his attorney had failed to inform him about the 85% minimum, or say anything about the 85% minimum at all.

Hutcherson claims that he did not actually become aware of the 85% minimum until he received an amended face sheet in prison on October 15, 2013, reflecting that information. Doc. 7, p. 8. He also alleges that he is hard of hearing, so did not overhear the exchange between his counsel and the judge at the plea hearing concerning the timing of his surrender, in which his counsel mentioned the 85% minimum. Hutcherson points out that he had to use a hearing assistive device at the post-conviction hearing of November 7, 2014.

Post-conviction counsel was not ineffective under *Strickland* for failing to raise Hutcherson's claim because, at the very least, Hutcherson does not claim to ever have told his post-conviction counsel that plea counsel failed to tell him, or withheld the information that, he would have to serve 85% of his sentence before becoming eligible for parole. By his own admission, Hutcherson had learned of the 85% requirement no later than October 2013, prior to his post-conviction hearing. Nothing in the record at the time of the post-conviction proceedings indicated that Hutcherson had not been told about the 85% minimum at the time of the plea. Post-conviction counsel therefore could not have been ineffective for failing to raise an allegation of a fact known by Hutcherson and which Hutcherson did not share with her. *See Slocum v. Kelley*, 854 F.3d 524, 532 (8th Cir. 2017) (counsel was not ineffective under *Strickland* for failing to request a competency hearing where the defendant did not tell counsel that

8

defendant had a mental illness and there was no objective evidence that he suffered from a mental illness).

Furthermore, post-conviction counsel could not have been ineffective because Hutcherson's claim that he was not aware of the 85% minimum at the time of the plea hearing is meritless. At the hearing on post-conviction relief, the following exchange on direct examination occurred between Hutcherson and his post-conviction counsel:

> Q: And you're currently serving a sentence of ten years for two counts of involuntary manslaughter?
> A: Yes.
> Q: And you're required to serve 85 percent of that sentence?
> A. Yes.
> Q: Did you plead guilty or did you have a trial?
> A. Pled guilty.
> Q. And was manslaughter the original charge in your case?
> A. No.
> Q: What was the original charge?
> A. Second-degree murder.
> Q: And was there a plea agreement in your case before you pled guilty?
> A: Yes.
> Q: As you understand it, what was that plea agreement?
> A: Two counts of involuntary manslaughter.
> Q: And was there an agreement on sentence?
> A: Ten years with 85 percent; two tens running concurrent.

Doc. 10-7, p. 63. At no point in the post-conviction hearing did he state that at the time he pled guilty, he had misunderstood his parole eligibility or been unaware of the 85 percent minimum, nor that he had been intentionally misled about it by his plea counsel, nor that anything about his eligibility for parole was an issue he wished to bring to the attention of the state court in the post-conviction proceeding. He in fact acknowledged that there was an agreement on his sentence which was to be "ten years with 85 percent."

In the face of the official record, Hutcherson's claim that he only learned about the 85 % minimum after being incarcerated is insufficient to create a dispute of fact. His post-conviction counsel could not be ineffective for failing to raise a meritless claim. *See Gray v. Bowersox*,

281 F.3d 749, 756 n. 3 (8th Cir. 2002) (holding that when counsel's objection would have been without merit, there is no viable ineffective assistance claim). *See also Strickland,* 466 U.S. at 690 (counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" and to overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance").

Hutcherson also requests an evidentiary hearing on the claim. However, a petitioner "is not entitled to a hearing where the record clearly indicates that his claims are either barred from review or without merit." *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994). As discussed above, Hutcherson's claim is barred from review and lacks merit.

Hutcherson argues that he is nevertheless entitled to an evidentiary hearing under the circumstances, because he is challenging the effectiveness of his state post-conviction counsel: "[I]t goes without saying that the factual basis for that claim was not developed because of counsel's incompetence." Doc. 13, p. 21 (citing, *inter alia, Sasser v. Hobbs,* 735 F.3d 833, 853-854 (8th Cir. 2013)). The Eighth Circuit rejected a similar, *Sasser*-based argument in *Dansby v. Hobbs*, 766 F.3d 809, 834 (8th Cir. 2014):

> Dansby contends that he need not show a "substantial" ineffective-assistance claim at this juncture, because this court's decision in *Sasser* automatically requires a remand for the district court to consider his claims. In *Sasser,* however, this court affirmed without remand the dismissal of twelve ineffective-assistance claims as "procedurally barred, meritless, or both." 735 F.3d at 850. Four claims were deemed "potentially meritorious" and remanded for an evidentiary hearing. *Id.* at 851. *Sasser* thus does not establish an automatic remand rule; it stands instead as authority that this court may evaluate whether claims of ineffective-assistance are "substantial" or "potentially meritorious" in the course of determining whether a remand is warranted.

As discussed above, Hutcherson's ineffective-assistance claim lacks merit. Therefore, he is not entitled to an evidentiary hearing with respect to this claim.

Hutcherson's first claim is denied.

B.  **Claim II, plea counsel's alleged failure to disclose to Hutcherson the expert report of Dr. Henson, and to provide him with pretrial motions and evidence.**

Hutcherson's second claim is in two parts. First, he claims that his trial counsel was ineffective for failing to disclose evidence to him that would have affected his decision to plead guilty. He states that his trial counsel never told him about the opinion of Dr. Henson, a toxicologist who wrote a letter in October 2012 stating that it could not be determined to a reasonable degree of scientific certainty that Hutcherson's blood alcohol level was .085 at the time of the accident, or a contributing cause of the accident. Doc. 7-2, p. 3.[1] This claim is procedurally barred. Hutcherson never claimed in the state court proceedings that Dr. Henson was not disclosed to him by trial counsel. Because he is raising a claim that could have been raised in a post-conviction motion, the claim is procedurally defaulted. *Coleman v. Thompson,* 501 U.S. 722, 729-32 (1991); *State ex rel. Zinna v. Steele,* 301 S.W.3d 510, 516 (Mo. 2010).

Furthermore, the claim is meritless because the state courts found that plea counsel did tell Hutcherson about the information they had received from the various experts they had consulted. Before a state court's findings may be set aside, a federal court must conclude that they lack even fair support in the record. *Marshall v. Lonberger,* 459 U.S. 422, 432 (1983). The state court's findings are presumed correct, and it is the petitioner's burden to rebut the presumption by "clear and convincing evidence." § 2254(e)(1). Credibility determinations are

---

[1] Hutcherson also states that in July 2015, Dr. Henson more specifically concluded that Hutcherson's blood alcohol level was no greater than .052 at the time of the accident. Doc. 7-2, pp. 5-6.

11

left for the state court to decide. *Graham v. Solem,* 728 F.2d 1533, 1540 (8th Cir.) (en banc). Hutcherson has not carried his burden.

Specifically, Mr. Fry, plea counsel, testified in the post-conviction proceeding that he had consulted with three experts—Mr. Citron, Mr. Brown, and Mr. Henson—concerning Hutcherson's blood tests and level of intoxication. Mr. Fry testified, "Only one of them came close, and it was my feeling, and I discussed it with Mr. Hutcherson, that I would not want to put [that one witness] on the stand subject to cross-examination." Doc. 10-7, pp. 28-29 of 85. Further, Mr. Fry testified that prior to the plea, he and Mr. Rosenblum met with Hutcherson frequently and went over all the discovery provided by the State, the depositions that they had conducted, and the information they had received from the various experts they had consulted. *Id.*, p. 32. Mr. Fry testified that the level of consultation he had had with Hutcherson ranked as some of the highest that he had had with clients over the years with respect to the type of charges Hutcherson faced. *Id.* The motion court expressly rejected Hutcherson's claim that he had not been given sufficient information by his trial counsel, finding that Hutcherson had received all information and documents he needed to make an informed decision to plead guilty, plea counsel contradicted Hutcherson's testimony, and counsel's testimony was credible. The motion court further found that Hutcherson's plea counsel were seasoned defense lawyers with experience in DWI accident cases, who had done what he asked them to do, fully investigated the case, and spent a great deal of time exploring every avenue of defense with him so that his decision to plead would be voluntary and made on the basis of all the facts. Doc. 10-4, p. 8-9. The Missouri Court of Appeals affirmed the motion court's decision. Hutcherson suggests that his counsel had a flat fee arrangement and that it was therefore in their financial interest to "keep him in the dark" about the exculpatory evidence and to exaggerate the strength of the prosecution's case. Doc. 7, p. 13. Hutcherson's post-hoc characterization of the fee arrangement, into which he

entered, does not rebut presumption of correctness afforded the state court's factual findings, including that they did everything Hutcherson asked them to do, by clear and convincing evidence. § 2254(e)(1); *see also Harrington v. Richter*, 562 U.S. 86, 102 (2011) ("If this standard is difficult to meet, that is because it was meant to be.") The record demonstrates that Hutcherson's claim that his counsel failed to inform him of Dr. Henson's opinion is meritless.

The second part of Hutcherson's Claim 2 is that trial counsel allegedly failed to provide him with copies of pretrial motions, including a motion to suppress, or his cell phone records, and "to keep him informed of exculpatory evidence." Doc. 7, p. 13. The claims are meritless because the motion court found Hutcherson not credible as to whether he had been kept informed of and seen all the documents and evidence in the case, including the motion to suppress, and found that plea counsel contradicted Hutcherson and that plea counsel was credible. Doc. 10-7, pp. 28-29, and 32 of 85. *See also* Doc. 10-6, pp. 56-63 (motion court's discussion of trial counsel's work on behalf of Hutcherson, and counsel's discussions with Hutcherson about their investigation and preparation, the evidence, and the pros and cons of going to trial). The Missouri Court of Appeals affirmed that holding. The Missouri Court of Appeals also found that Hutcherson had not cited, and it was not aware of, any authority that required he actually have copies of all of his attorneys' documents before entering an informed plea, and that in particular, even if he had had copies of his cell phone records, they would not have assisted him because he was not charged with and did not plead guilty to distracted driving. Doc. 10-4, p. 10 of 14. Hutcherson has not rebutted the presumption of correctness of the state court's factual findings by clear and convincing evidence.

Finally, Hutcherson argues that "[o]n the issue of prejudice, *de novo* review is required because the Missouri Court of Appeals' opinion is contrary to *Strickland*," in that the court concluded he had not shown that counsel's allegedly deficient performance "would likely have

changed the outcome of the trial." Doc. 13, p. 27 (citing Doc. 10-4, p. 9). Hutcherson says that the correct test for prejudice in the context of a guilty plea is whether there is a reasonable probability the petitioner would have elected not to plead guilty and exercise his right to go to trial. *Id.*, pp. 27-28. Hutcherson does not explain how the Missouri Court of Appeals' articulation of the second *Strickland* prong has in any way prejudiced him, but in any event, this Court need not address the second *Strickland* prong. The factual findings made in state court, discussed above and to which this Court defers, do not demonstrate that Hutcherson's counsel was ineffective. The state court found that Hutcherson was not credible with respect to the claim that he was not informed about motions and the evidence. Hutcherson therefore cannot establish the first *Strickland* prong. Having failed to establish the first prong, the Court need not address the second one. *See Strickland*, 466 U.S. at 697 (if the defendant makes an insufficient showing on either prong, a court need not address both).

Hutcherson's request for an evidentiary hearing with respect to this claim fails for the same reason that it failed with respect to the first one. The record clearly indicates that his claims are either procedurally barred from review or without merit. *See Wilson*, 12 F.3d at 146.

In view of the foregoing, Hutcherson's second claim is denied.

### C. A certificate of appealability is denied

An appeal may not be taken to the court of appeals from the final order denying habeas relief in a § 2254 proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). To grant such a certificate, the justice or judge must find a substantial showing of the denial of a federal constitutional right. 28 U.S.C. § 2253(c)(2). *See also Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997). A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or

the issues deserve further proceedings. *Cox v. Norris,* 133 F.3d 565, 569 (8th Cir. 1997). No substantial showing is presented here. Therefore, the Court denies a certificate of appealability.

## III. Conclusion

Petitioner Earl Hutcherson's petition for writ of habeas corpus under 28 U.S.C. § 2254 is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated:  October 10, 2017
Jefferson City, Missouri